UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| **MARY J. GLADDEN,** | ) | NO. CV 12-6068-MAN |
| Plaintiff, | ) ) | |
| v. | ) ) | MEMORANDUM OPINION AND ORDER |
| **CAROLYN W. COLVIN,**[1] **Acting Commissioner of Social Security,** | ) ) ) ) | |
| Defendant. | ) ) | |

Plaintiff filed a Complaint on July 18, 2012, seeking review of the denial by the Social Security Commissioner ("Commissioner") of plaintiff's application for a period of disability ("POD") and disability insurance benefits ("DIB"). On March 5, 2013, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. The parties filed a Joint Stipulation on April 17, 2013, in which: plaintiff seeks an order reversing the Commissioner's decision and awarding benefits or, alternatively, remanding for further administrative proceedings; and the Commissioner requests that her decision be affirmed or, alternatively, remanded for further administrative proceedings.

---

[1]   Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration on February 14, 2013, and is substituted in place of former Commissioner Michael J. Astrue as the defendant in this action. (*See* Fed. R. Civ. P. 25(d).)

**SUMMARY OF ADMINISTRATIVE PROCEEDINGS**

On April 27, 2009, plaintiff filed an application for a POD and DIB, alleging an inability to work since January 22, 2009, due to "[l]upus/[high blood pressure]/alopicia/arthritis." (Administrative Record ("A.R.") 130.) At the reconsideration level, plaintiff additionally alleged disability due to "[f]oot pain worse [and] have trouble standing" and "[v]ision worse and fingers are deforming," which commenced on August 4, 2009. (A.R. 160.)

The Commissioner denied plaintiff's claim initially and upon reconsideration. (A.R. 58-67, 65-69.) On March 9, 2011, plaintiff, who was represented by counsel, appeared and testified at a hearing before Administrative Law Judge Robert A. Evans (the "ALJ"). (A.R. 33-51.) Sandra Schneider, a vocational expert ("VE") also testified. (*Id.*) On March 24, 2011, the ALJ denied plaintiff's claim (A.R. 19-28), and the Appeals Council subsequently denied plaintiff's request for review of the ALJ's decision (A.R. 1-5). That decision is now at issue in this action.

**SUMMARY OF ADMINISTRATIVE DECISION**

The ALJ found that plaintiff last met the insured status requirements of the Social Security Act on September 30, 2014, and that she has not engaged in substantial gainful activity ("SGA") since the alleged onset date of January 22, 2009. (A.R. 24.) The ALJ determined that plaintiff has the severe impairments of "degenerative disc disease, rheumatoid arthritis, and systemic lupus," but she does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). (*Id.*)

After reviewing the record, the ALJ determined that plaintiff has the residual functional capacity ("RFC") to perform "light work as defined in 20 C.F.R. [§] 404.1567(b) except lift/carry 20 pounds occasionally and 10 pounds frequently; stand/walk 6 hours in an 8 hour period; sit 6

hours in an 8 hour period; occasional push/pull with bilateral upper extremities; and occasionally climb, balance, stoop, kneel, crouch, and crawl." (A.R. 24.)

The ALJ found that plaintiff was able to perform her past relevant work ("PRW") as a "material coordinator" and "quality control inspector," as actually and generally performed. (A.R. 27.) Accordingly, the ALJ concluded that plaintiff has not been under a disability, as defined in the Social Security Act, since January 22, 2009, the alleged onset date. (A.R. 28.)

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted). The "evidence must be more than a mere scintilla but not necessarily a preponderance." Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006)(citation omitted).

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y of Health and Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988); *see also* Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to

more than one rational interpretation. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn, 495 F.3d at 630; see also Connett, 340 F.3d at 874. The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006)(quoting Stout v. Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch, 400 F.3d at 679.

## DISCUSSION

Plaintiff alleges the following issues: whether the ALJ failed to properly consider the opinion of plaintiff's treating physician, Dr. Emile Heinze, and whether the ALJ properly considered plaintiff's subjective complaints. (Joint Stipulation ("Joint Stip.") at 6.)

### I.  The ALJ Failed To Set Forth Appropriate Reasons For Rejecting The Opinion Of Plaintiff's Treating Physician, Dr. Heinze.

It is the responsibility of the ALJ to analyze evidence and resolve conflicts in medical testimony. Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989). In the hierarchy of physician opinions considered in assessing a social security claim, "[g]enerally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. § 404.1527(d).

The opinions of treating physicians are entitled to the greatest weight, because the treating physician is hired to cure and has a better opportunity to observe the claimant. Magallanes, 881 F.2d at 751. When a treating physician's opinion is not contradicted by another physician, it may

be rejected only for "clear and convincing" reasons. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). When contradicted by another doctor, a treating physician's opinion may only be rejected if the ALJ provides "specific and legitimate" reasons supported by substantial evidence in the record. *Id.*

On February 11, 2011, plaintiff's treating physician Dr. Emile Heinze, a rheumatologist, completed an "Arthritis Impairment Questionnaire" ("Questionnaire"). (A.R. 426-33.) Dr. Heinze noted that he had been treating plaintiff since August 2008, and saw her every six months thereafter. (A.R. 426.) He diagnosed plaintiff with systemic lupus, as well as "Sjogren's, Raynauds, [and] low back pain with spondylolisthesis of L5-S1 - grade 1-2." (*Id.*) Dr. Heinze opined that plaintiff can: ambulate effectively without an assistive device (A.R. 428); perform fine and gross movement, but she is significantly limited in her ability to perform repetitive reaching, handling, fingering, or lifting (*id.*); do no pushing, pulling, kneeling, and bending (A.R. 432); can sit for three hours and stand and/or walk for less than one hour in an eight-hour workday (A.R. 429); and can occasionally lift and carry up to five pounds (A.R. 430). Dr. Heinze noted plaintiff's symptoms of back pain, fatigue, decreased sensation of her right lateral foot, and bilateral wrist and hand pain. (A.R. 429-30.)

In his decision, the ALJ rejected the opinion of Dr. Heinze, as set forth in the Questionnaire, in favor of that of consultative examiner Dr. John Sedgh,[2] on the grounds that: (1) Dr. Heinze's opinion was "not supported by the treating notes"; and (2) Dr. Heinze opined plaintiff could "ambulate effectively, does not need an assistive device to ambulate, and could perform fine and gross movements effective." (A.R. 26-27.)

---

[2] On June 18, 2009, Dr. Sedgh opined that:

> [Plaintiff] can lift and carry 20 pounds occasionally and 10 pounds frequently. She can stand and walk six hours in an eight-hour day with normal breaks. She can sit for six hours in an eight-hour day. Kneeling, crouching and stooping should be limited to occasional.

(A.R. 247.)

5

The ALJ's first reason for rejecting the opinion of Dr. Heinze -- *to wit*, that his opinion is not supported by the treating notes (A.R. 27) -- is impermissibly conclusory.  *See* <u>Regennitter v. Comm'r of SSA</u>, 166 F.3d 1294, 1299 (9th Cir. 1999)(noting that "conclusory reasons will not justify an ALJ's rejection of a medical opinion"); <u>Embrey v. Bowen</u>, 849 F.2d 418, 421–22 (9th Cir. 1988)("To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required . . . .  The ALJ must do more than offer his conclusions.  He must set forth his own interpretations and explain why they, rather than the doctors', are correct.").  Moreover, the ALJ's first reason is factually incorrect.  Although there is but a single treatment note from Dr. Heinze in the record, it indicates he reviewed plaintiff's past medical records, including a January 2011 x-ray of plaintiff's lumbar spine, which revealed a "[t]ransitional vertebral body at lumbosacral junction"; "[m]ild degenerative changes of lower lumbar spine"; "[d]iskogenic disease at LS-S1 level"; and "[g]rade 1 - 2 anterior spondylolistehsis of L5." (A.R. 422, 435.)  Dr. Heinze also conducted a physical examination of plaintiff and laid out a plan addressing plaintiff's medical complaints.  That plan included ordering an MRI of plaintiff's lumbar spine to rule out spinal stenosis and to refer plaintiff to "orthopedic surgery once imaging completed." (A.R. 424.)  Further, on the Questionnaire, Dr. Heinze noted that his diagnoses were supported by his clinical findings of plaintiff's limited range of motion of her lower back, joint tenderness of her bilateral wrists and lumbar spine, joint deformity of her lumbosacral spine, and sensory loss of her right foot. (A.R. 426-27.)  Thus, as Dr. Heinze's medical records could support his assessed limitations of plaintiff, the ALJ's first rationale is not a legitimate reason for rejecting Dr. Heinze's opinion.

Moreoever, plaintiff submitted for the first time to the Appeals Council an MRI study of her lumbar spine performed in March 2011, which appears to have been ordered by Dr. Heinze to rule out spinal stenosis.  The MRI revealed among other things: (1) at L5-S1, "moderately severe degenerative disk disease . . . with a grade 1-grade 2 anterolisthesis of L5 on S1"; "resultant moderately severe spinal canal stenosis"; and "moderately severe left and severe right neural

foraminal stenosis"; (2) at L4-5, "severe hypertrophic facet arthropathy with mild posterior disk bulging"; "moderate spinal canal stenosis"; and "mild-to-moderate bilateral neural foraminal stenosis"; and (3) at T11-T12, "spinal canal stenosis, and some possible cord impingement." (A.R. 439.)[3] Thus, had the ALJ considered this MRI, he might have reached a different conclusion with respect to the weight to be afforded to Dr. Heinze's opinion, including with respect to plaintiff's limitations.

The ALJ's second reason for discounting Dr. Heinze's opinion was that the treating physician noted that plaintiff "could ambulate effectively, does not need an assistive device to ambulate, and could perform fine and gross movements effectively." (A.R. 27.) The ALJ, however, does not explain how this finding is inconsistent with Dr. Heinze's assessment of plaintiff's functional limitations. Respondent argues that Dr. Heinze's opinion -- *i.e.*, that plaintiff could effectively ambulate without an assistive device -- is inconsistent with his opinion that plaintiff could only stand or walk for up to one hour per workday. (A.R. 428-29.) While it is true that Dr. Heinze noted plaintiff is able to ambulate effectively without the use of an assistive device, plaintiff has a variety of impairments that could limit the duration of time she can stand or walk. For example, Dr. Heinze noted that plaintiff suffers from back pain, fatigue, and decreased sensation in her right foot. (A.R. 430.) Therefore, the ALJ's second ground for discounting Dr. Heinze's opinion is not a specific and legitimate reason for affording Dr. Heinze's opinion little weight.

Accordingly, the ALJ failed to properly reject the opinion of Dr. Heinze. Moreover, given

---

[3] The Appeals Council considered the March 2011 MRI (A.R. 5), which it made part of the Administrative Record, but determined that the evidence "d[id] not provide a basis for changing the [ALJ]'s decision" (A.R. 1.) Notwithstanding the Appeals Council's determination, this Court must consider such evidence in determining whether the ALJ's decision is supported by substantial evidence and free from legal error. *See* Brewes v. Comm'r of SSA, 682 F.3d 1157, 1163 (9th Cir. 2012)(holding that "when the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence").

the absence of other treating records from Dr. Heinze and because the Questionnaire indicates that there was an earlier treatment relationship dating back to August 2008, further development of the record likely would aid the ALJ in assessing the appropriate weight to give to Dr. Heinze's opinion and in making a proper determination of whether plaintiff has an impairment that precludes her from gainful employment. Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001)(noting that an ALJ "has an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered")(citations and internal quotations omitted); see Widmark, 454 F.3d at 1069 (an ALJ has a duty to develop the record where there is a "gap" in the medical evidence). Also, such further development of the record should aid the ALJ in resolving any conflict or ambiguity -- if he believes one exists -- with respect to the opinions contained in Dr. Heinze's treating notes and his Questionnaire. Finally, given that the ALJ relied primarily on the opinion of a one-time examining physician, Dr. Sedgh, in assessing plaintiff's RFC, any additional evidence obtained from plaintiff's treating physician may affect the ALJ's ultimate decision, because the opinions of treating physicians generally are to be accorded the greatest weight. Holohan, 246 F.3d at 1202.

On remand, after further developing the record and considering the record as a whole, including the additional evidence submitted by plaintiff to the Appeals Council, the ALJ must provide reasons, if they exist, in accordance with the requisite legal standards, for discounting and/or rejecting the opinion of plaintiff's treating, Dr. Heinze.

## II. The ALJ Failed To Provide The Requisite Clear And Convincing Reasons For Rejecting Plaintiff's Subjective Pain Testimony.

Once a disability claimant produces objective medical evidence of an underlying impairment that is reasonably likely to be the source of the claimant's subjective symptom(s), all subjective testimony as to the severity of the claimant's symptoms must be considered. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991); see also

20 C.F.R. § 404.1529(a) (explaining how pain and other symptoms are evaluated). "[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each." Robbins, 466 F.3d at 883. The factors to be considered in weighing a claimant's credibility include: (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and her conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. *See* Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); *see also* 20 C.F.R. § 404.1529(c).

Here, the ALJ concluded that "[a]fter careful consideration of the evidence . . . [plaintiff]'s medically determinable impairments could reasonably be expected to cause the alleged symptoms." (A.R. 25.) Significantly, the ALJ cited no evidence of malingering by plaintiff. Nonetheless, the ALJ determined that plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible to the extent they are inconsistent with the above [RFC] assessment." (*Id.*) Accordingly, the ALJ's reasons for finding that plaintiff was not credible with respect to her subjective symptom and pain testimony must be "clear and convincing."

The ALJ rejected plaintiff's testimony regarding the severity of her pain symptoms on the grounds that: (1) plaintiff's asserted limitations are out of proportion to the objective clinical findings and observed functional restrictions; (2) there is no evidence of severe disuse muscle atrophy that would be compatible with plaintiff's inactivity and inability to function; (3) plaintiff testified that her pain is controlled when sitting but constant and severe when standing; (4) plaintiff's complaints are inconsistent with the treatment she receives; (5) plaintiff's alleged limitations are inconsistent with her daily activities; and (6) plaintiff stopped working because she was laid off, not because she was disabled. (A.R. 27.)

9

The ALJ's first reason for discounting plaintiff's credibility, namely that there was a lack of objective evidence to support her asserted functional restrictions, is unavailing. (A.R. 26-27.) As a threshold matter, the lack of corroborating medical evidence, by itself, can never be a reason to discount subjective symptoms. Burch, 400 F.3d at 680–81 (ALJ may consider lack of corroborating medical evidence so long as it is not the only reason for discounting a claimant's credibility). Although there was objective medical evidence of conditions that could cause plaintiff to suffer from significant symptoms, the ALJ nevertheless found that plaintiff's claim that her lower back pain precludes her from working is not supported by the objective evidence, because, among other things, "[p]hysical examinations have noted full range of motion and no joint tenderness; "[r]adiographs of the lumbar spine in April 2008 only showed grade I-II spondylolisthesis L4 over L5 and degenerative changes at L4-5 and L5-S1"; and there is no evidence of nerve root impingement or spinal stenosis. (A.R. 26.) As discussed above, however, this finding is factually incorrect. Dr. Heinze noted in his Questionnaire that plaintiff had a limited range of motion to her lower back and joint tenderness to her bilateral wrists and lumbar spine. (A.R. 426.) Further, the MRI considered by the Appeals Council revealed moderately severe spinal canal stenosis at both L5-S1 and L5-4 with some spinal canal stenosis and some possible cord impingement at T11-T12. (A.R. 439.) As a result, the ALJ's finding that there is a lack of objective medical evidence to support plaintiff's claimed limitations is not a clear and convincing reason for discounting plaintiff's testimony.

With respect to the ALJ's second reason -- that there is "no evidence of severe disuse muscle atrophy that would be compatible with [plaintiff's] alleged inactivity and inability to function" (AR 27) -- the ALJ cites no medical opinion or medical literature that supports the conclusion that someone with plaintiff's impairments necessarily would or should have severe disuse muscle atrophy. It was error for the ALJ to render a medical judgment and interject his own medical opinion. See Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975)(an ALJ is forbidden from making his own medical assessment beyond that demonstrated by the record). Further, plaintiff did not testify that she was completely incapacitated, but rather, that she is

unable to do tasks for long periods of time due to her pain. (A.R. 45-46.) Thus, without more, a lack of muscle atrophy does not rise to the level of a clear and convincing reason for discounting plaintiff's credibility.

The ALJ's third reason for rejecting plaintiff's credibility -- namely, that plaintiff testified that "while in pain, it is controlled when sitting and constant and severe when standing" (A.R. 27) -- also is not convincing, because the ALJ mischaracterizes plaintiff's testimony and fails to account for the record as a whole. With respect to the testimony on which the ALJ relies, plaintiff was referring only to her *foot pain* when she stated that such pain is controlled when sitting. (A.R. 41.) The ALJ failed to account for plaintiff's immediately prior testimony that: her back pain is "constant" and standing and walking make the pain worse; "sitting has a connection to [her] back pain," because when she "sit[s] a long time [she] get[s] stiff and sore"; and as a result of her back pain, she can sit for no more than an hour before she needs to stand up and move around. (A.R. 40.) An ALJ may not, as he did here, reach a conclusion and then justify it by ignoring competent evidence in the record that would suggest an opposite result. Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984). Moreover, the ALJ's mischaracterization of the record by ignoring plaintiff's testimony as a whole and misstating the context of a selected portion is error. *See* Reddick v. Chater, 157 F.3d 715, 722-723 (9th Cir. 1998)(misleading paraphrasing of the record and/or not accounting for all evidence of record constitutes error). Thus, the ALJ's third reason for finding plaintiff to lack credibility was not convincing.

The ALJ's fourth ground for his adverse credibility finding -- that plaintiff's subjective pain complaints and alleged functional limitations were inconsistent with the treatment she receives (A.R. 27) -- also is unavailing. Specifically, the ALJ concluded that: there was no evidence in the record that plaintiff receives treatment for her hands, such as physical therapy; plaintiff is treated conservatively with medication for her lower back pain; plaintiff "treats with Tylenol and motrin and takes neurontin for lupus"; and there is no evidence that plaintiff had been referred for more aggressive treatment, such as pain management, epidural injections, or surgery. (*Id.*)

11

Contrary to the ALJ's statements, it appears that plaintiff was referred to a physical therapist, and was a possible candidate for back surgery. At the hearing, the following colloquy occurred:

| | |
|---|---|
| Attorney: | Okay. Have you been recommended for surgery at all for any of these problems? |
| Plaintiff: | My last visit with my rheumatologist he said it might be possible surgery. He - - I take a MRI tomorrow. |
| Attorney: | Okay, well what was he talking about? Surgery for what? |
| Plaintiff: | My back. |
| Attorney: | Okay. So the MRI tomorrow is for your lower back? |
| Plaintiff: | Yes, and spine. |
| Attorney: | Okay, so given that, has any physical therapy been recommended for either your back or your hands? |
| Plaintiff: | Yeah, I have haven't got the referral yet. |

(A.R. 45.) On February 11, 2011, Dr. Heinze noted that he would "refer [plaintiff] to orthopedic surgery once imaging [is] completed."[4] (A.R. 423.) Moreover, plaintiff reported, on a November 22, 2010 Questionnaire, that she does not use any other sources of pain relief, including physical therapy and visits to a pain management clinic, because she was "waiting for [a] refer[r]al to come in [the] mail" and "also can't afford it." (A.R. 188.) While an unexplained failure to seek treatment may cast doubt on a claimant's credibility, such an inference is unreasonable when plaintiff cannot afford treatment. See Fair v. Brown, 885 F.2d 597, 602 (9th Cir. 1989). As a result, the ALJ's fourth reason for rejecting plaintiff's subjective complaints is not convincing.

---

[4] There is no medical evidence in the record from Dr. Heinze after February 11, 2011, and thus, the record does not indicate whether or not Dr. Heinze subsequently referred plaintiff for orthopedic surgery.

The ALJ's fifth reason -- *to wit*, that plaintiff's activities of daily living are inconsistent with her alleged complaints -- is not clear and convincing.  First off, the ALJ's description of plaintiff's daily activities is incomplete.  The ALJ noted that plaintiff "is able to dress herself without assistance although she has some difficulty combing her hair, she cleans, does laundry, and shops." (A.R. 27.)  The ALJ, however, failed to account for plaintiff's statements that she can only perform activities such as cooking, cleaning, and laundry for about 15 minutes, because her "back starts hurting really bad" and she needs about 20-25 minutes before she can start moving again. (A.R. 45-46.)  The ALJ erred by failing to take this significant qualification into account and by ignoring plaintiff's testimony as a whole.  *See* Reddick, 157 F.3d at 722–23.

Moreover, exacerbating the foregoing error, the ALJ fails to explain how plaintiff's ability to care for herself, grocery shop and perform light household chores (albeit for only 15 minutes at a time) translates into the ability to perform full-time work and renders plaintiff's testimony about her pain and symptoms unworthy of belief.  *See* Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001)(noting that the "mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability"); Smolen v. Chater, 80 F.3d 1273, 1283 n.7 (9th Cir. 1996)("The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication.").  Therefore, the ALJ's fifth reason does not constitute a clear and convincing reason for finding plaintiff to be not credible.

The sixth and final reason cited by the ALJ -- that plaintiff stopped working because she was laid off and not because of any disability (A.R. 27, 186) -- is the only clear and convincing reason provided by the ALJ for discrediting plaintiff's credibility.  *See* Bruton v. Massanari, 268 F.3d 824, 828 (9th Cir. 2001)(affirming the ALJ's adverse credibility determination based in part because the claimant told the ALJ that he left his job due to a lay-off, rather than because he was

injured). It is not clear to the Court, however, that the ALJ would have rendered his adverse credibility finding base don this reason alone, giver the numerous other reason on which he relied. As this case is being remanded for the ALJ to reconsider Dr. Heinze's opinion and the newly submitted MRI, which may support plaintiff's complaints and her alleged limitations, the ALJ should also reassess plaintiff's credibility in the light of that evidence. After doing so, the ALJ must either credit plaintiff's testimony regarding her pain and subjective symptoms or provide clear and convincing reasons why plaintiff's testimony in this respect is not credible.

### III.  Remand Is Required.

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *Id.* at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings."). However, where there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. *Id.* at 1179-81.

Remand is the appropriate remedy to allow the ALJ the opportunity to remedy the above-mentioned deficiencies and errors. *See, e.g.*, Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004)(remand for further proceedings is appropriate if enhancement of the record would be useful); Bunnell v. Barnhart, 336 F.3d 1112, 1116 (9th Cir. 2003)(affirming remand order based, in part, on ALJ's failure to provide adequate reasons for rejecting claimant's treating physicians' opinions). On remand, the ALJ must correct the above-mentioned deficiencies and errors. After doing so, the ALJ may need to reassess plaintiff's RFC, in which case additional testimony from a vocational expert likely will be needed to determine what work, if any, plaintiff can perform.

## CONCLUSION

Accordingly, for the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: September 30, 2013

*Margaret A. Nagle*

MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE